IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

CHRISTIE HAWKINS,                          :
                                           :
         Plaintiff,                        :
                                           :
v.                                         :
                                           :        No. 5:15-CV-208 (CAR)
JEANETTE H. WALDEN, in her                 :
official capacity as Mayor of              :
Milledgeville; MILLEDGEVILLE               :
POLICE DEPARTMENT; and                     :
JEFFERY BERNARD BROWN;                     :
                                           :
         Defendants.                       :
_____          :

## ORDER ON MOTION FOR SUMMARY JUDGMENT

Plaintiff Christie Hawkins brings cruel and unusual punishment claims pursuant

to 42 U.S.C. § 1983 against Defendants Jeanette H. Walden, in her official capacity as

Mayor of Milledgeville, the Milledgeville Police Department, and Jeffery Bernard

Brown, a former Milledgeville Jail detention officer.   Plaintiff contends Defendants

violated her Eighth Amendment rights after Defendant Brown sexually assaulted her

while she was incarcerated in the Milledgeville Jail.  Plaintiff also brings related Georgia

state law claims, and a claim under the Prison Rape Elimination Act of 2003, 42 U.S.C. §

15601 *et seq*.  Currently before the Court is Mayor Walden and the Milledgeville Police

Department's Motion for Summary Judgment [Doc. 16].  After careful consideration, the

Court finds Plaintiff has failed to create a genuine issue of material fact as to Defendants' liability.  Thus, Defendants' Motion [Doc. 16] is **GRANTED**.[1]

## LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2]  A genuine issue of material fact only exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[3]  Thus, summary judgment must be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict.[4]  When ruling on a motion for summary judgment, the Court must view the facts in the light most favorable to the party opposing the motion.[5]

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

---

[1] The Court has reviewed the parties' motions and briefs and determined that oral argument would not aid in resolution of Defendants' Motion for Summary Judgment.  Defendants' Request for Oral Hearing [Doc. 16-3] is therefore **DENIED** as unnecessary.

[2] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[4] *See id.* at 249-52.

[5] *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992).

affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law.[6]  If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact.[7]  This evidence must consist of more than mere conclusory allegations or legal conclusions.[8]

## BACKGROUND

Plaintiff Christie Hawkins was incarcerated at the Milledgeville Jail when a detention officer, Defendant Jeffery Brown, sexually assaulted her.  The facts viewed in the light most favorable to Plaintiff, the nonmovant, are as follows:

*The Milledgeville Jail's Policies and Procedures*

The Milledgeville Jail (the "Jail") is located within the headquarters of the Milledgeville Police Department (the "MPD").[9]  The Jail assigns one jailor to a shift from Monday to Wednesday, and on Thursday through Sunday, the Jail runs a split shift between six jailors.[10]  The City and the MPD's policies and procedures do not require a female officer to be on duty when there are female detainees or inmates present.

---

[6] *Celotex Corp.*, 477 U.S. at 323 (internal quotation marks omitted).
[7] *See* Fed. R. Civ. P. 56(e); *see also Celotex Corp.*, 477 U.S. at 324-26.
[8] *See Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991).
[9] Defs. Reply Brief, [Doc. 26] at p. 3, n. 2.
[10] Dep. of Chief Acer Swicord, [Doc. 17-3] at p. 13:6-21.

Additionally, there is no policy or standard procedure requiring more than one jailor to be on duty when there are female detainees or inmates at the Jail.  The MPD does not differentiate between which of the jailors will supervise male or female inmates.[11]  In the event additional help is needed at the Jail, the jailors are instructed to call an MPD officer to assist them.[12]

The Jail has separate cell blocks for male and female inmates.  Jailors are required to do head counts at each shift change and monitor the inmates using the Jail's cameras.[13]  There are cameras located outside the holding cell, in the hallway of the men's block and the hallway of the women's block, and inside the jailors' office.[14]  However, there is a day room located at the end of the women's block, which includes a television and toilet that is not monitored by cameras.[15]  Instead, this area can be checked when jailors do their rounds.  Jailors are required to do in-person surveillance of every inmate "at staggered intervals at least every 30 minutes to one hour."[16]  The MPD's security inspection policies specifically states:

> When conducting surveillance checks, staff members are not to fraternize, gossip, or show favoritism to inmates.  When interacting with inmates,

---

[11] *Id*. at p. 12:24-25, 13:1-6.
[12] *Id*. at p. 14:3-4.
[13] Dep. of Def. Jeffery Brown, [Doc. 17-2] at p. 12:1-13, 13:15-20; Milledgeville Police Dep't General Order #15-03, Security Inspections, [Doc. 21-2] at p. 5-6.
[14] Dep. of Swicord, [Doc. 17-3] at p. 13:9-11, 15:19-24.
[15] *Id*.  at p. 15:24-25, 16:1-2; *see* Dep. of Pl. Christie Hawkins, [Doc. 17-1] at p. 52:3-4; 54:7-11.
[16] Milledgeville Police Dep't General Order # 15-03, Security Inspections, [Doc. 21-2] at p. 5-6.

staff members are to treat each inmate in a firm and fair manner.  Staff members should not downgrade, use discriminating words, or intimidate inmates.[17]

Jailors are provided employee handbooks specifying these policies and procedures and are required to train with a Jail supervisor before working their own shifts.[18]

In June of 2012, after receiving his jailor certification from Tift College, Defendant Brown began working for the MPD as a detention officer in the Jail.[19]  Brown was considered an employee of the City of Milledgeville.[20]  He trained with Officer Dumas, the Jail supervisor, and received an employee handbook before working any shifts on his own.[21]  His shift duties included supervising both the male and female inmates, monitoring the cameras, and performing fifteen minute check-ins every hour.[22]  Brown usually worked the 6:00 p.m. to 6:00 a.m. shift alone, unless there was an event happening in the City that required an additional jailor to be on duty.[23]

_First Incident with Defendant Brown_

Sometime between June 2012 and May 2013, Plaintiff was incarcerated at the Milledgeville Jail for a short period of time.[24]  It was during this time she first

---

[17] _Id_. at p. 7.
[18] Dep. of Brown, [Doc. 17-2] at p. 11:1-8.
[19] _Id_. at p. 6:23-25, 7:1-11, 9:7-13.
[20] _Id_. at p. 9:7-19.
[21] _Id_. at p. 11:1-25, 12:11-13.
[22] _Id_. at p. 11:24-25, 12:1-13.
[23] _Id_.  at p. 10: 10-22, 11:16-23.
[24] _See_ Dep. of Hawkins, [Doc. 17-1] at p. 11-12.

encountered Brown.[25]  Plaintiff and Brown did not interact much while she was in Jail, but Plaintiff recalls Brown making an inappropriate comment to her during one of his rounds.  While walking past Plaintiff's cell block, Brown asked her to "bust it open," which Plaintiff understood to mean open her legs and expose herself.[26]  Plaintiff became upset after the comment but did not report it to anyone at the time.  Plaintiff only told her family after she was released.  Ultimately, the Jail was never notified about this incident.[27]

<u>Second Incident with Defendant Brown</u>

In April 2013, Plaintiff was arrested, and thus violated her probation.  Due to this violation, Plaintiff was sentenced to the Milledgeville Jail from May 29, 2013, to June 28, 2013.[28]

On June 4, 2013, Brown was working the 6:00 p.m. to 6:00 a.m. shift.  Upon arriving, Brown did a head count with the on-duty jailor and was briefed about the previous shift before the other jailor left.  Brown served dinner around 6:30 or 6:45 p.m., and then the inmates made phone calls sometime between 7:30 and 8:00 p.m. Normally, when the inmates are done using the phones, they watch television in the

---

[25] *Id*. at p. 16:11-14.
[26] *Id*. at p. 16:15-21, 17:8-9.
[27] *Id*. at p. 15:10-18.
[28] *Id*. at p. 13:17-24.

day rooms.[29]   According to Plaintiff, sometime after dinner, she went to make her nightly phone call.  While Plaintiff was on the phone, Brown came out of his office and exposed himself to Plaintiff.    Plaintiff alleges Brown stood in the doorway masturbating, so she immediately ended her call, left the room, and returned to the women's day room.[30]

Earlier this same day, the Jail received several complaints from the female inmates that the only toilet in the women's day room was not working properly.[31] When Brown began his shift that evening, Plaintiff made several complaints to him about the toilet.  After doing the head count and serving dinner, Brown called his supervisor, Officer Dumas, to notify her about the toilet.[32]  Officer Dumas already knew about the issue and told Brown not to worry about it.[33]  Nonetheless, Brown decided to make an "out of order" sign to place on the toilet.[34]

When Brown went to hang the sign on the toilet, Plaintiff was in the day room watching television.  Brown notified Plaintiff he called his supervisor about the problem and then told Plaintiff to stop flushing sanitary napkins down the toilet.  However, instead of returning to his office, Brown stayed in the unmonitored day room and

---

[29] Dep. of Brown, [Doc. 17-2] at p. 13:15-25.
[30] Dep. of Hawkins, [Doc. 17-1] at p. 14:15-22, 47:11-24.
[31] *Id.* at p. 71:11-17, 84:22-23.
[32] Dep. of Brown, [Doc. 17-2] at p. 13:15-25, 14:1-3, 21-25.
[33] *Id.* at p. 14: 21-15.
[34] *Id.* at p. 15:1-8.

solicited Plaintiff to perform oral sex.[35]  When Plaintiff refused, Brown "snatched" her up, pulled her pants down, put her on the table, and had sex with her.[36]  Plaintiff claims she tried to resist by saying no and attempting to get away, but she did not yell loud enough for the other female inmate to hear, as that inmate was down the hall in the shower.[37]  Plaintiff also felt there was no point in really fighting, as Brown was the only jailor on duty.[38]  When it was over, Brown told her not to tell anyone and went back to work.[39]

The next morning, once Brown's shift was over, Plaintiff reported the sexual assault to Lieutenant Holsey.[40]  Officer Dumas and then Detective Byrd, an MPD officer, interviewed Plaintiff about what occurred the previous night.[41]  After the interviews, Detective Byrd and Detective Kahn took Plaintiff to the Oconee Regional emergency room where the doctor determined she had vaginal tearing.[42]  During this time, the MPD Chief of Police was also notified of the incident.  Chief Swicord arrived at the Jail

---

[35] Dep. of Hawkins, [Doc. 17-1] at p. 71:11-20.
[36] *Id*. at p. 56:22-25, 71:19-25.
[37] *Id*. at p. 51:8-22, 58:15-23, 60:23-25, 61:1-4
[38] *Id*. at p. 60:20-22, 64:10-18.
[39] *Id*. at p. 72:2-6.
[40] *Id*. at p. 20:8-17, 21:14-16.
[41] *Id*. at p. 22:24-25, 23:1-25, 24:10-17.
[42] *Id*. at p. 27:22-25, 33:19-21.

that day, secured the scene, and called the Georgia Bureau of Investigation ("GBI"). Once the GBI arrived, Chief Swicord turned the investigation over to them.[43]

Thereafter, Brown admitted to engaging in sexual contact with Plaintiff while she was an inmate but claims he did not attack her or force himself on her.  Instead, Brown contends Plaintiff approached him, it was a consensual encounter, and she only performed oral sex on him.  Brown stated he knew what he did was wrong and prohibited by the MPD.[44]  The MPD immediately terminated him for violating its policies and procedures, as well as state law.  Additionally, Brown pled guilty to sexual assault and registered as a sex offender.[45]  According to Chief Swicord, prior to this incident, the MPD never received any complaints of sexual assault, harassment, or abuse at the Jail.[46]

## DISCUSSION

Based on these events, Plaintiff seeks to hold Defendants Mayor Walden and the MPD liable under § 1983 for cruel and unusual punishment, in violation of the Eighth Amendment.  Plaintiff contends Defendants' staffing policy, as well as inadequate supervision of the Jail, led to her sexual assault.  Additionally, Plaintiff brings claims

---

[43] Dep. of Swicord, [Doc. 17-3] at p. 14:19-25, 22:22-24; Dep. of Brown, [Doc. 17-2] at p. 22:14-25, 23:1-5, 23:19-22.

[44] Dep. of Brown, [Doc. 17-2] at p. 21:9-25, 22:1-5, 25:8-25, 26:1-3.

[45] *Id*. at p. 21:11-23, 22:6-7.

[46] Dep. of Swicord, [Doc. 17-3] at p. 20:11-17.

9

against Defendants pursuant to state law and the Prison Rape Elimination Act. Defendants seek summary judgment on all claims, arguing they should not be liable for Brown's actions when three is no past complaints of sexual assaults at the Jail and Brown was immediately terminated for violating the MPD's policies. After careful consideration, the Court agrees. The Court will address each § 1983 claim against Defendants separately, and then discuss the remaining claims.

## I. § 1983 Claims

### A. Police Department Liability

First, the Court must dismiss all § 1983 claims against the Milledgeville Police Department, as it is not a proper party defendant. "The [MPD] is an integral part of the City [ ] government and is merely the vehicle through which the City government fulfills its policing functions."[47] Consequently, the MPD is not considered its own legal entity subject to suit.[48] Thus, Defendants' Motion for Summary Judgment is **GRANTED** as to all § 1983 claims against the MPD.

---

[47] *Shelby v. City of Atlanta*, 578 F.Supp. 1368, 1370 (N.D. Ga. 1984); *see also Harris v. Albany Police Dep't*, No. 1:14-CV-67, 2014 WL 1773866, at *2 (M.D. Ga. May 2, 2014).

[48] *See Robinson v. Hogansville Police Dep't*, 159 F. App'x 137, 138 (11th Cir. 2005) (per curiam) ("[S]heriff's departments and police departments are not usually considered legal entities subject to suit."(quoting *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992))); *Lovelace v. DeKalb Cent. Probation*, 144 F. App'x 793, 795 (11th Cir. 2005) (per curiam) (upholding the district court's decision that the police department is not subject to suit).

### B.  Municipal Liability

Second, Plaintiff's § 1983 claim against Mayor Walden, in her official capacity, is essentially a suit against the City of Milledgeville (the "City").[49]  In order for Plaintiff to assert a claim under § 1983 against the City, Plaintiff "must show: (1) that [her] constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation."[50]  A policy or custom that would create municipal liability can be either a written custom or policy, such as an ordinance, or an unwritten practice that is so widespread, "permanent and well settled as to constitute a custom or use with the force of law."[51]  "Regardless whether the basis of the claim is an official promulgated policy or an unofficially adopted custom, it must be the moving force behind the constitutional deprivation before liability may attach."[52]

---

[49] *See Ky. v. Graham,* 473 U.S. 159, 166 (1985); *Busby v. City of Orlando,* 931 F.2d 764, 776 (11th Cir. 1991).

[50] *McDowell v. Brown,* 392 F.3d 1283, 1289 (11th Cir. 2004); *see also Randall v. Scott,* 610 F.3d 701, 707 n. 2 (11th Cir. 2010) (requiring a plaintiff allege either direct or inferential facts "respecting all the material elements necessary to sustain a recovery under some viable legal theory" to assert a § 1983 claim against a municipality).

[51] *City of St. Louis v. Praprotnik,* 485 U.S. 112,127 (1988).

[52] *Fundiller v. City of Cooper City,* 777 F.2d 1436, 1442 (11th Cir. 1985) (internal quotation marks omitted) (finding there must "be some degree of 'fault' on the part of the municipality," as well as "a causal link between the custom or policy and the deprivation," to hold a municipality liable).

Plaintiff states she has an Eighth Amendment right to be free from cruel and usual punishment, which includes the right to be free form sexual assault while in jail. Plaintiff contends Defendants' policy of staffing one jailor per shift to monitor both female and male inmates created an unsafe environment and exposed her to sexual assault.  Thus, Defendants' staffing policy constituted deliberate indifference and led to the constitutional violation.   Additionally, Plaintiff argues Defendants' failure to properly supervise the Jail amounted to deliberate indifference and caused the constitutional violation.[53]   The City does not dispute Plaintiff's constitutional rights were violated, but instead argues the Jail's supervision and its staffing policy were not the "moving force" behind the violation.  Defendant Brown's actions were an isolated incident, and there were no previous issues at the Jail to put the City on notice.  The Court agrees.

*Defendants' Policy of Having One Staff Member on Duty*

Plaintiff is required to locate a "policy" to ensure the "municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the

---

[53] The Court notes that Plaintiff concedes she did not attempt to bring a negligent training claim; thus, the Court will not address this argument by Defendants. *See* Pl.'s Response to Defs.'s Mtn. for Summary Judgment, [Doc. 18] at p. 8.

municipality."[54]  Plaintiff "must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice."[55]

In this case, Plaintiff does not present evidence of a policy allowing, condoning, or promoting sexual contact in the Jail.  Indeed, both parties acknowledge there was a specific policy against any type of personal dealings or sexual contact between jailors and inmates.  Instead, Plaintiff points to Defendants' decision to have only one staff member on duty as evidence of a policy that constitutes deliberate indifference.  The MPD's policy was to always have one jailor assigned to a shift at the Jail Monday through Wednesday.  However, the Jail runs a split shift between six jailors the rest of the week, as those are the busiest days of the week.  Plaintiff argues the MPD's policies should require a female jailor or at least two jailors to be present on each shift when there are female inmates at the Jail.  As a result of this failure, Plaintiff was sexually assaulted, and therefore the City is liable.

---

[54] *Bd. of Cnty. Cm'mrs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403-404, 407 (1997) ("That a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation.")

[55] *Id*.

13

However, to hold the City liable, Plaintiff's injuries must be a "plainly obvious consequence" of the policy decision.[56]  Stated another way, "liability must be premised on a finding that [the City's specific] decision was highly likely to inflict the particular injury [Plaintiff] suffered."[57]   Here, the Court cannot conclude Defendants' staffing decision was "highly likely" to result in Brown sexually assaulting Plaintiff and, therefore, an obvious consequence.  There is no evidence of any previous complaints of sexual assault or harassment or any reported incidents while only one jailor was on duty that would have put the City on notice.  Further, it is undisputed Brown was a trained corrections officer without any previous complaints against him or incidents of misconduct.  Plaintiff never notified anyone in the Jail about Brown's comment to her until after the sexual assault occurred.  Immediately upon learning of the sexual assault, the MPD initiated an investigation, referred the matter to the Georgia Bureau of Investigation, and then terminated Brown.  Up until this point, Defendants had no

---

[56] *Kendall v. Sutherland*, No. 1:13CV-04263-RWS, 2014 WL 5782533, at *7 (N.D. Ga. Nov. 5, 2014); *see also McDowell v. Brown*, 392 F.3d 1283, 1292-93 (11th Cir. 2004) ("To 'test the link' between [plaintiff's] injury and the County's conduct, we look to whether a complete review of the [County's] budget decision (and the resulting understaffed Jail) reveals that the Board should have known that [plaintiff's] injuries were a "plainly obvious consequence" of that decision." (quoting *Brown*, 520 U.S. at 412)).

[57] *See Kendall*, No. 1:13CV-04263-RWS, 2014 WL 5782533, at *7 (finding even if a County's decision makes the violation more likely to occur than not, that alone cannot create an inference that the decision produced a specific constitutional violation) (internal quotation marks omitted).

reason to suspect Brown would sexually assault an inmate or otherwise violate any MPD's policies procedures.

Without any allegations that Defendants were on notice of sexual assaults occurring in the jail or other issues caused by having one jailor on duty, the Court cannot conclude Defendants deliberately staffed one jailor knowing this decision was highly likely to lead to sexual abuse by jailors.[58]   Thus, the Court finds Plaintiff has failed to show the City had a policy that constituted deliberate indifference and caused a constitutional violation.

_Defendants' Failure to Supervise and Staff the Jail_

Plaintiff also contends Defendants' failure to supervise and adequately staff the Jail amounted to deliberate indifference and caused her to be sexually assaulted.   A failure to properly supervise and staff a jail can provide the basis for a finding of

---

[58] _See McDowell_, 392 F.3d at 1292-93 (finding Plaintiff did not demonstrate the County was the "moving force" behind the injury when the injuries resulting from the failure to provide timely medical support had never happened before, and no evidence was presented to show the County acted with a conscious disregard); _see also Barney v. Pulsipher_, 143 F.3d 1299, 1310-11 (10th Cir. 1998) ("Nor does the record here contain any evidence to indicate that male guards at [the] Jail, if left alone with female inmates, posed a risk to their health and safety…. [W]e decline to find knowledge by [the sheriff and the county] of a substantial risk of harm from the mere fact of [plaintiff's] gender."); _Hovater v. Robinson_, 1 F.3d 1063, 1066-68 (10th Cir. 1993) (holding Plaintiff failed to establish the sheriff and the county acted with deliberate indifference—i.e., that the defendants "disregarded an obvious risk to the safety of female inmates by allowing a single male guard to have custody of a female inmate absent any indication that the guard would assault her…. To find harm present in these circumstances would, in effect, require the conclusion that every male guard is a risk to the bodily integrity of a female inmate whenever the two are left alone.").

deliberate indifference when such failures "can be properly thought of as a city policy or custom."[59]  "To show deliberate indifference, a plaintiff must present some evidence to demonstrate that the municipality knew of a need to … supervise in a particular area and the municipality made a deliberate choice not to take any action."[60]  For example, "systemic and gross deficiencies in staffing, facilities, equipment, or procedures" may be used to show deliberate indifference.[61]

Again, the only evidence Plaintiff presents to support this argument is the MPD's policy of staffing one jailor on a shift to supervise male and female inmates.  However, this alone does not show there was a need to improve jailor supervision or add staff members, and there is no additional evidence of problems arising when one jailor was on duty to put Defendants on notice.[62]  Instead, Plaintiff argues the MPD was in

---

[59] *See Smith v. City of Sumiton*, No. 6:12-cv-03521-RDP, 2013 WL 3357573, at *4 (N.D. Ala. July 2, 2013).

[60] *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 379, 389 (1989)) (internal quotation marks omitted).

[61] *Harris v. Thigpen*, 941 F.2d 1495, 1506 (11th Cir. 1991) ("Deliberate indifference to inmates' health needs may be shown, for example, by proving that there are 'such systemic and gross deficiencies in staffing, facilities, equipment, or procedures that the inmate population is effectively denied access to adequate medical care.'" (quoting *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980), *cert. denied*, 450 U.S. 1041 (1981))); *see also LaMarca v. Turner*, 995 F.2d 1526, 1536 (11th Cir. 1993); *Johnson v. Cannon*, 947 F.Supp. 1567, 1573 (M.D. Fla. 1996) (noting the Fifth Circuit "found that supervisory personnel could be found liable for deprivation of Constitution rights, if the failure to supervise amounted to a deliberate indifference to the Plaintiff's constitutional rights," in *Doe v. Taylor Independent School District*, 15 F.3d 443, 445 (5th Cir. 1996)).

[62] *See Sewell v. Town of Lake Hamilton*, 117 F.3d 448, 490 (11th Cir. 1997) ("Where the proper response ... is obvious to all without training or supervision, then the failure to train or supervise is generally not "so likely" to produce a wrong decision as to support an inference of deliberate indifference by city policymakers to the need to train or supervise.").

violation of the federal guidelines set forth in the Prison Rape Elimination Act ("PREA"), and this in itself shows deliberate indifference to Plaintiff's constitutional right to be free from sexual assaults.  However, the Court disagrees.

The PREA is a federal law, but "not every violation of federal law 'give[s] rise to a civil rights claim pursuant to section 1983.  This is because section 1983 itself creates no rights; rather it provides a method for vindicating federal rights elsewhere conferred.'"[63]   "[W]here the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action."[64]  The PREA was enacted to "address the problem of prison rape, authorize[ ] grant money, and create[ ] a commission to study the issue."[65]   The PREA does not grant prisoners any specific rights, thus an alleged violation of the PREA is not actionable under § 1983.[66]

---

[63] *De'lonta v. Clarke*, No. 7:11-cv-00483, 2012 WL 4458648, at *3 (W.D. Va. Sept. 11, 2012) (quoting *Doe v. Broderick*, 225 F.3d 440, 447 (4th Cir. 2000)).

[64] *Id.* (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 286 (2002)) (internal quotation marks omitted); *see also Foster Children v. Bush*, 329 F.3d 1255, 1270 (11th Cir. 2003).

[65] 42 U.S.C. § 15601 *et seq.; see also Jones v. Schofield*, No. 1:08–CV–7 (WLS), 2009 WL 902154, at *2 (M.D. Ga. Mar. 30, 2009) ("A reading of the Prison Rape Elimination Act makes clear that its goal is to lessen the occurrence of rapes in prisons across this Country. Its focus concentrates on statistics, standards, developing information, and regulating federal funding in an effort to lessen prison rapes.").

[66] *De'lonta*, No. 7:11-cv-00483, 2012 WL 4458648, at *3; *see, e.g., McDowell v. Officer Wayne Hording*, No. 1:15-CV-104-GNS, 2016 WL 2853566, at *2 (W.D. Ky. May 13, 2016);  *Diamond v. Allen*, No. 7:14-CV-124(HL), 2014 WL 6461730, at *4 (M.D. Ga. Nov. 17, 2014) ("PREA does not create a private cause of action for allegations of prison rape, or otherwise confer any extra rights outside of the normal prison

Ultimately, Plaintiff does not provide evidence Defendants knew the jail was inadequately supervised and staffed, nor does she identify any "pattern of injuries" that could be linked to Defendants' staffing or supervisory decisions.[67]   Therefore, Plaintiff fails to show Defendants were deliberately indifferent to a risk of sexual assaults in the Jail.[68]   Accordingly, Defendants are entitled to summary judgment regarding all municipal liability claims.

### C. Supervisory Liability

Third, Plaintiff seeks to hold Mayor Walden liable as a "supervisor" over the MPD.  "Like municipalities, supervisors cannot be held liable for the acts of employees

---

grievance system." (internal quotation marks and citations omitted)); *Mosley v. Medlin*, No. CV 313–086, 2014 WL 3110027, at *9 (S.D. Ga. July 7, 2014) ("PREA seeks to compile data and statistics concerning incidences of prison rape and to adopt standards to combat the same, and 'does not confer upon Plaintiff any extra rights outside of the normal prison grievance system.'"); *Brown v. Parnell*, No. 5:09CV-P159-R, 2010 WL 1418735, at *5 (W.D. Ky. April 7, 2010); *Law v. Whitson*, No. 2:08-cv-0291-SPK, 2009 WL 5029564, at *4 (E.D. Cali. Dec. 15, 2009) ("The Act in itself contains no private right of action, nor does it create a right enforceable under Section 1983. Plaintiff thus fails to state a federal section 1983 claim based on a violation of the [PREA].").

[67] *See Boyd v. Nichols*, 616 F.Supp.2d 1331, 1345 (M.D. Ga. 2009) ("[Plaintiff] is 'asking this Court to extend liability to inadequate budgeting practices, but does not identify any 'pattern of injuries' linked to the County's budgetary decisions…. Even assuming that [Plaintiff] contends [the] County's accounting practices relating to the … Jail are 'defective,' this still does not establish liability." (internal citations omitted)).

[68] *See Smith*, No. 6:12-cv-03521-RDP, 2013 WL 3357573, at *3 ("Without any additional facts regarding prior assaults or harassment by [Defendant] or any other Officer …, Plaintiff's claim that [the City] implemented a custom allowing assaults and harassment of arrestees is nothing more than a conclusory allegation."); *see also Boyd*, 616 F.Supp.2d at 1344 ("The Court must also consider whether [the] County's action was 'taken with the requisite degree of culpability … with deliberate indifference to its known or obvious consequences." (quoting *McDowell*, 392 F.3d at 1291)).

solely on the basis of respondeat superior."[69]   To hold Mayor Walden liable in her supervisory role, Plaintiff must show either "the supervisor personally participated in the constitutional deprivation or that there was a causal connection between the supervisor's actions and the constitutional deprivation."[70]   A causal connection can be established when (1) "a history of widespread abuse puts the responsible supervisor on notice of the need for improved training or supervision, and the official fails to take corrective action,"[71] or (2) "when a supervisor's improper custom or policy results in deliberate indifference to constitutional rights."[72]   "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences."[73]

Plaintiff contends Mayor Walden adopted the MPD's improper staffing policy that caused her to be sexually assaulted, and therefore, there is a casual connection between Mayor Walden's actions and the constitutional deprivation.   Plaintiff also attempts to argue Mayor Walden is liable because the MPD refused to follow its own

---

[69] *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1443 (11th Cir. 1985).
[70] *Sturdivant v. City of Atlanta*, 596 F. App'x 825, 829-30 (11th Cir. 2015) (per curiam) (citing *Crawford v. Carroll*, 529 F.3d 961, 978 (11th Cir. 2008)).
[71] *Fundiller*, 777 F.2d at 1443.
[72] *Doe v. Sch. Bd. of Broward Cnty.*, 604 F.3d 1248, 1266 (11th Cir. 2010).
[73] *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990).

policies and immediately fix the toilet when the Jail was notified of the issue.  If not for this failure, Plaintiff would not have been assaulted, and this too shows deliberate indifference to her constitutional rights.  To support her arguments, Plaintiff points to *Howard v. City of Columbus*.[74]  However, this case is clearly distinguishable.

First, *Howard* dealt with training and supervising jail staff regarding a prisoner's serious medical needs.[75]  Second, there was evidence an excessive delay in the prisoner's transportation to the hospital was the result of a jail policy and contributed to the prisoner's death.[76]  Third, in *Howard*, the jail staff and supervisors were all aware the prisoner was seriously sick and ignored his pleas to have a physician examine him or send him to the hospital.[77]  Furthermore, there was evidence that thirteen inmates previously died from diabetes while in custody at this jail.[78]  The Georgia Court of Appeals found the plaintiff was examined by under-trained jail medical personnel due to practices and policies promulgated by the defendants.[79]  Based on all of this evidence, the court held "a question of fact existed as to whether there was a causal connection

---

[74] 239 Ga.App. 399 (1999).
[75] *Id*. at 405-10.
[76] *Id*. at 406-07.
[77] *Id*. at 405, 407-08.
[78] *Id*. at 408.
[79] *Id*. at 408-09.

between the implementation of jail medical policies under color-of-state-law" and the prisoner's death.[80]

In this instance, Plaintiff cannot point to any similar policies or facts to establish a question of fact exists. The MPD's failure to assist Brown or fix the toilet immediately does not constitute deliberate indifference to Plaintiff's right to be free from sexual assault or somehow establish a causal connection to the constitutional deprivation. Further, as previously stated, there is no evidence of any issues caused by having only one jailor on duty, nor is there any evidence of previous complaints of sexual harassment that would have shown a need for additional staffing and supervision. Plaintiff did not tell anyone in the Jail that Brown previously made an inappropriate comment to her, nor did she report any problems until after the incident. The MPD had policies in place that prohibited Brown's conduct, and the MPD terminated Brown immediately after the incident.[81] Ultimately, Plaintiff cannot show a causal link between

---

[80] *Id.* at 409.

[81] *See e.g.*, *Franklin v. Tatum*, 627, F. App'x 761, 766 (11th Cir. 2015) (finding the sheriff's action shifted from gross negligence to deliberate indifference once he had a reason to suspect prison officials were breaking the law; specifically, the Court held "[a] jury must decide whether [the sherrif's] failure to implement policies, enforce existing policies, or investigate the allegations against [a prison official] (all after he had a warning that such actions were necessary) combined to cause an obvious and predictable consequence—the sexual assaults against [prisoners]").

Mayor Walden's actions and the constitutional deprivation. Therefore, the Court finds any claim against Mayor Walden in her supervisory capacity must fail.

## II. State Law Claims

Additionally, Plaintiff brings state law claims against Defendants in their official capacity. Defendants argue they are entitled to sovereign immunity on all alleged state law claims, and the Court agrees.

Under Georgia law, suits against state officials in their official capacity are in reality suits against the state and, therefore, involve sovereign immunity.[82] The Georgia Constitution provides that "sovereign immunity extends to the state and all of its departments and agencies" unless specifically waived by statute.[83] With regard to municipalities, "there is no waiver of the sovereign immunity… and such municipal corporations [are] immune from liability for damages."[84] "Municipal corporations shall not be liable for failure to perform or for errors in performing their legislative or judicial

---

[82] *See Williams v. Fulton Cnty. Sch. Dist.*, __ F.Supp.3d__, No. 1:14-CV-0296-AT, 2016 WL 3055898, at *31-36 (N.D. Ga. March 31, 2016) (discussing sovereign immunity and official capacity claims).
[83] Ga. Const. art. 1, § 2, para. 9(a), (e).
[84] O.C.G.A. § 36-33-l(a).

22

powers [i.e., discretionary functions]."[85]  On the other hand, municipalities may be liable for performing ministerial duties in a neglectful or improper manner.[86]

Plaintiff contends Defendants had a "ministerial duty" to properly train and supervise its employees regarding sexual assault, harassment, and abuse.  Defendants failed to properly carry out this duty and are therefore not entitled to sovereign immunity.  However, the Court finds this argument unpersuasive.

The operation of a police department and jail, including the degree of training and supervision to be provided to its officers, is a discretionary governmental function.[87]  For this reason, Defendants are entitled to sovereign immunity against Georgia law claims.  Furthermore, O.C.G.A. § 36-33-3 specifically states "[a] municipal corporation shall not be liable for the torts of policemen or other officers engaged in the discharge of

---

[85] O.C.G.A. § 36-33-1(b).

[86] *Id.*

[87] *See e.g., Slaughter v. Dooly Cnty.*, No. 5:06-CV-143(CAR), 2007 WL 2908648, at *14 (M.D. Ga. Sept. 28, 2007) ("In this case, enactment of jail policies and the training and supervision of employees are clearly discretionary acts."); *Harvey v. Nichols*, 260 Ga.App. 187, 191 (2003) ("Moreover, this Court has consistently held that the operation of a police department, including the degree of training and supervision to be provided its officers, is a discretionary governmental function as opposed to a ministerial, proprietary, or administratively routine function.")

[87] *Murray v. Ga. Dept. of Transp.*, 284 Ga.App. 263, 293 (2007).

the duties imposed on them by law."[88]   Accordingly, Defendants are entitled to summary judgment regarding Plaintiff's state law claims.

### III. Prison Rape Elimination Act Claims

To the extent Plaintiff brings separate claims under the PREA, these claims must fail.  As Plaintiff acknowledges, the PREA does not provide a private right of action for Plaintiff.  Therefore, Defendants' are entitled to summary judgment as to this claim.

### CONCLUSION

Based on the foregoing, Defendants' Motion for Summary Judgment [Doc. 16] is **GRANTED**, and Defendants' Request for Oral Hearing [Doc. 16-3] is **DENIED** as unnecessary.   Thus, Defendants Mayor Walden and the Milledgeville Police Department are **DISMISSED**.  The claims against Defendant Brown remain.

**SO ORDERED,** this 28th day of September, 2016.

<u>S/ C. Ashley Royal</u>
C. ASHLEY ROYAL, JUDGE
UNITED STATES DISTRICT COURT

---

[88] O.C.G.A. § 36-33-3.